Exhibit 1

GLS and ASSOCIATES, Inc. *** 16515 RR12, Suite 416
Wimberley, Texas 78676 *** (972) 523 2886, GLS66912@AOL.COM

January 18, 2023

Justin Winch, Attorney at Law


Re: Glen Washington's rental property

Location: 1725 Nunez street, New Orleans, LA

Subject: repair costs vs estimate

Mr. Winch.

I have compared the remodeling costs incurred by Mr. Washington to repair this two story, four unit rental during Hurricane Ida against my Xactimate estimate based on industry standards and the results of moisture readings on both floors.

I have also reviewed the carriers files on this claim including the DEF exhibits in order to render my opinions.

Whereas his 191 pages of receipts is not constructed like the Xactimate estimate, the results are the same. Mr. Washington undertook his own financing and repaired this structure of 4 rental units with a remodeling scope that returned them to rental income status.  The scope of repairs was not precisely the same as the estimate, but he did not have the Xactimate estimate to compare to at that time. According to Mr. Washington, he had the framing treated against the removal of mold recorded by the insurance adjuster. In addition, he followed remediation standards that remove ductwork contaminated by the mold spores. Therefor the Xactimate estimate would be a precise cost per industry standards. The repairs By Mr. Washington are not the same and additional details remain..


All the adjusters recorded and agreed that Mr.: Washington's property had mold growing on it and continuing to proliferate.  However, industry standards require remediation and steps taken that the insurers simply refused to take:  they

SafepointWashBDFTH01157

Exhibit 1

GLS and ASSOCIATES, Inc. *** 16515 RR12, Suite 416
Wimberley, Texas 78676 *** (972) 523 2886, GLS66912@AOL.COM

refused and in fact zero dollars were paid to Mr. Washington pursuant to the
ADDITIONAL COVERAGE that Mr. Washington PAID FOR.  See DEF 007, where the
insurers policy declaration, on "page 2 of 4" of their own document, the insurer
shows that Mr. Washington bought and paid a premium to the insurance
company — a check they most certainly cashed — for "Fungi … Bacteria [MOLD]
Coverage - Louisiana." (Footnote, see DEF 007.)

Despite paying the insurance company to have the right to claim benefits if MOLD
one day was present on his property, as we sit here today, Mr. Washington was
denied that right.  Having identified mold, conclusively, and yet refused to take
the next appropriate steps to eliminate its proliferation and growth AND having
failed to pay benefits due under the express terms of the policy, industry
standards have been grossly violated.  Finally, my own opinion, that the
ventilation system needs to be replaced, is the least of the measures that could
be taken at this point.  The insurer should concern itself with liability to Mr.
Washington himself, for physical injury to his own health, as my review of the
records from the insurer shows that the seriousness and precautions needing to
be taken to protect health and human safety were never even mentioned to Mr.
Washington.  This information and warning for his own safety was recklessly
omitted, when there was an absolute and unequivocal necessity to inform
him.  The insurers actions in this instance would actually have the effect of
misleading the policyholder into a false sense of safety and created an even
greater risk of harm, than before they became involved.

According to DEF exhibit 146 dated 10/26/21. Adjuster James Moran agreed with
field adjuster John Donadio to allow for one month's rental loss coverage . DEF
exhibit 148 left the rental amount blank. For the record, my opinion is that 30
days repair is impossible.  It is my opinion and knowledge of the shortage of
materials and labor in this state of Louisiana that 90 days is realistic..

Exhibit 1

GLS and ASSOCIATES, Inc. *** 16515 RR12, suite 416
Wimberley, Texas 78676 *** (972) 523 2886, GLS66912@AOL.COM

The policy ( SLAD1231984-03) defines loss rental coverage is maxed at 10% of coverage A, Coverage A is  $293,000.00 so rental loss has a capacity of $29,300.00. so 4 units rental for 3 months would be the basis of loss income.

Respectfully submitted,

Gary L Sanders,  President

National General adjuster

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| CLEANING | 8,498.02 | 3.79% |
| GENERAL DEMOLITION | 7,301.61 | 3.25% |
| DOORS | 3,696.42 | 1.65% |
| DRYWALL | 23,170.00 | 10.33% |
| ELECTRICAL | 16,686.93 | 7.44% |
| FLOOR COVERING - CERAMIC TILE | 1,103.95 | 0.49% |
| FLOOR COVERING - WOOD | 245.41 | 0.11% |
| FINISH CARPENTRY / TRIMWORK | 3,817.93 | 1.70% |
| FINISH HARDWARE | 875.28 | 0.39% |
| HEAT,  VENT & AIR CONDITIONING | 11,203.98 | 4.99% |
| INSULATION | 6,294.74 | 2.81% |
| LIGHT FIXTURES | 1,697.52 | 0.76% |
| PLUMBING | 4,063.23 | 1.81% |
| PAINTING | 44,754.54 | 19.95% |
| ROOFING | 12,362.08 | 5.51% |
| WATER EXTRACTION & REMEDIATION | 15,818.52 | 7.05% |
| O&P Items Subtotal | 161,590.16 | 72.03% |
| Material Sales Tax | 4,582.42 | 2.04% |
| Overhead | 24,926.19 | 11.11% |
| Profit | 33,234.55 | 14.81% |
| Total | 224,333.32 | 100.00% |

*This report was written specifically for the subject property based on inspection and data available at the time.*

*ACTUAL ONSITE TESTING FOR MOISTURE WAS CONDUCTED USING A FLIR MR277 INFRARED GUIDED MEASUREMENT  INTERLINK*
*ATTACHED TO  A FLIR MR12 BALL PROBE MOISTURE  SENSOR THAT READS UP TO 4 INCHES PAST THE SURFACE..  PHOTOS ARE THEN MADE OF THE MEASURED RESULTS.*
*WE UTILIZIED A  5 FOOT LONG MAST EXTENDER  THAT ALLOWED FOR THE ACTUAL TESTING OF CEILINGS AND HIGH WALLS.*

*Actual testing of the moisture readings started at 10:30 AM on May 2, 2022.  The elevated readings were photographed and inserted in this report.*
*Recorded levels were above acceptable limits requiring a scope of mitigation and repairs.  The elevated moisture readings of the*
*floors will require a complete dry out sanding and refinish for their continuous surface.     Ceilings and walls will be estimated per the actual room readings as listed in the*
*floor plan.*

*Due to the elevated  moisture readings, a separate test was initiated at 11:12 AM  for particle levels and their effect on the living spaces. This test was conducted using*
*a Particle Scan Pro Air born  Class 1, Laser  diode based particle counter , serial number 101-001179,.  Testing started outside to record the ambient conditions that is*
*needed to compare the density of the interior, Particles   from .03, 05, 07 (micrometers) were measured  and recorded in*

SafepointWashBDFTH01156